David Ryan, General Counsel Topeka Metropolitan Transit Authority 201 N. Kansas Topeka, Kansas 66603-3622
Vern Jarboe Topeka City Attorney City Hall 215 S.E. 7th Topeka, Kansas 66603-3914
Dear Mr. Ryan and Mr. Jarboe:
You request our opinion regarding application of the tax lid law, K.S.A. 79-5021 et seq., to the levy for the Topeka metropolitan transit authority (TMTA). Specifically you question whether the fact that TMTA's current levy authority was established by charter ordinance relieves the TMTA from the provisions of the tax lid law insofar as the method for opting out under K.S.A. 1992 Supp. 79-5036 involves the same procedure.
The Topeka metropolitan transit authority is established by K.S.A.12-2801 et seq. and section A9-1 of the Topeka code. The TMTA is responsible for providing public transportation for the city. It is currently funded by section A9-2 of the Topeka code which was adopted by charter ordinance effective January 26, 1980. The charter ordinance authorizes the city of Topeka to levy 2 mills as a source of revenue for TMTA. At the present time TMTA is receiving 1.55 mill of the authorized 2 mill maximum. TMTA is now inquiring into its status under the tax lid imposed by K.S.A. 79-5021 et seq., presumably because it desires a levy increase.
K.S.A. 1992 Supp. 79-5022, as amended, provides in part:
 "(a) In 1990 and in each year thereafter, all existing statutory fund mill levy rate and aggregate levy rate limitations on taxing subdivisions are hereby suspended.
 "(b) Except as otherwise provided in K.S.A. 79-5024 to 79-5027, inclusive, and amendments thereto, no city, county, township, municipal university or community college shall certify to the county clerk of the county any tax levies upon tangible property, excluding levies specified in K.S.A. 79-5028, and amendments thereto, which in the aggregate will produce an amount which was levied by such taxing divisions in the base year."
Pursuant to these provisions, statutory fund limits expressed in mills are suspended. The focus is instead placed on the aggregate dollar amount produced by the taxing subdivision's total levy. The aggregate dollar amount is established by the dollar amount levied by the taxing subdivision in the base year, 1988 or 1989, whichever is designated by the taxing subdivision. K.S.A. 1992 Supp. 79-5021. As we concluded in Attorney General Opinion No. 87-163, even if the actual levy for the base year was less than the authorized levy limit at that time, the taxing subdivision is limited to the actual aggregate dollar amount levied in the base year. This continues until the suspension on existing statutory fund and aggregate levy limitations is removed. (Now scheduled for July 1, 1995. K.S.A. 1992 Supp. 79-5038, as amended by L. 1993, ch. 256, sec. 1.)
K.S.A. 79-5021 et seq. apply uniformly to all cities. Thus, it is applicable to Topeka and the city's levies. See Kan. Const., art. 12, sec. 5(c)(4). There are, however, exceptions to the tax lid. K.S.A. 1992 Supp. 79-5028 lists levies that are exempt from the lid. K.S.A. 79-5029 allows taxing subdivisions, after the first year, to exempt themselves from the lid for a specified number of years subject to a protest petition. Under K.S.A. 79-5030 the board of tax appeals may authorize tax levies in excess of the aggregate limitation. Finally, a subdivision may exempt itself after the first year from some or all of the provisions of the tax lid. K.S.A. 1992 Supp. 79-5036.
K.S.A. 1992 Supp. 79-5036 provides in pertinent part:
 "(a) The governing body of a city may elect, in the manner prescribed by and subject to the limitations of section 5 of article 12 of the Kansas Constitution, to exempt such city from the provisions of K.S.A. 79-5021 to 79-5033, inclusive, or to modify the provisions thereof."
Accordingly, the city of Topeka may exempt itself from K.S.A. 79-5021 to 79-5033, but it must follow the requirements established in article 12, section 5 of the Kansas constitution which provides in part:
 "(c)(1) Any city may by charter ordinance elect in the manner prescribed in this section that the whole or any part of any enactment of the legislature applying to such city . . . shall not apply to such city.
 "(2) A charter ordinance is an ordinance which exempts a city from the whole or part of any enactment of the legislature as referred to in this section and which may provide substitute and additional provisions on the same subject. Such charter ordinance shall be so titled, shall designate specifically the enactment of the legislature or part thereof made inapplicable to such city by the adoption of such ordinance." (Emphasis added.)
As previously stated, TMTA is currently funded through a charter ordinance, but such was enacted on January 26, 1980, before enactment of the tax lid law. We opined in 1985 that a city must "strictly comply" with the requirements of article 12, section 5. Attorney General Opinion No. 85-145. See e.g. State v. Kerns, 229 Kan. 207 (1981) (in which the Kansas Supreme Court strictly construed the language of article 2, section 20 of the state constitution). A charter ordinance must "designate specifically" the enactment of the legislature made inapplicable to the city by the adoption of the ordinance. Kan. Const., art. 12, sec. 5(c)(2). "Such specificity is necessary in order to make the protest and referendum provisions of the home rule amendment meaningful." Attorney General Opinion No. 85-145. Because the charter ordinance levying the tax for TMTA does not specifically designate K.S.A. 79-5021 et seq. as provisions being made inapplicable to the city, that ordinance is not sufficient to exempt the city of Topeka from the provisions of K.S.A. 79-5021 et seq.
Further, to find otherwise would defeat the intended purpose of the tax lid law. The intent of K.S.A. 1992 Supp. 79-5021 et seq. is generally recognized as preventing increases in taxes as result of using anticipated higher reappraised values. Attorney General Opinions No. 87-163, 87-158. With the statewide reappraisal of property, the legislature foresaw a potentially extreme increase in property taxes due to the overall increase in property valuation. To combat this perceived problem they enacted K.S.A. 79-5021 et seq. to limit taxing subdivisions from levying for more dollars than they had received the year before reappraisal with very specific and limited exceptions. The legislature then decided to extend the lid beyond the first years after reappraisal. Presently the tax lid is to expire in 1995. K.S.A. 1992 Supp. 79-5038, as amended by L. 1993, ch. 256, sec. 1.
Nowhere in the statute did the legislature indicate that it wanted to exempt all levies which were previously created or increased by charter ordinance. Rather, the legislature allowed taxing subdivisions to prospectively exempt some or all of their levies from the lid by charter ordinance. If the legislature intended all funds previously created by charter ordinance to be exempt, then the public could do nothing about the inevitable increase of those tax levies. Exemption through a new charter ordinance, however, enables the voting public to have direct control over that issue, being now fully informed of the effects of reappraisal.
Although the voters granted the charter ordinance in 1980, they could not at that time have foreseen the 1989 reappraisal and its effect on property taxes. The public granted the 2 mill levy in relation to the existing property valuations. In our opinion, the Kansas legislature did not intend to increase the tax burden to this extreme without allowing the public to participate in the decision.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm